Todd Willis against Industrial Commission 5090493. Counselor, please. My name is Rand Hale and I represent the appellant, Todd Willis, in this matter. This is an appeal from a decision of the Workers' Compensation Commission finding the petitioner only permanently partially disabled and reversing the decision of the arbitrator who had found that he was permanently totally disabled. They found that the arbitrator's decision was against the manifest rate of the evidence and our contention is, as is one of the cases that we cited, the Pass on Motor Fuels case, our contention is that the record indicates an opposite conclusion clearly was a proper result. It's the Commission's decision that we review under a manifest weight standard, not the arbitrator's. I agree. The fact that the Commission decided opposite the arbitrator has nothing to do with manifest weight. I understand. The only thing we have to do with manifest weight is the circuit court's decision as it relates to the Commission's decision. So what are you saying? That the arbitrator's decision wasn't against the manifest weight? No, I'm saying that the Workers' Compensation Commission decision, which was affirmed by the circuit court, was against the manifest weight. Okay, thank you. I'm sorry for the confusion. My client was injured on March 29, 2005, while lifting barrels of ammunition shells. His main treating physician was Dr. Christopher Smith. He was in the hospital from April 19, 2005 until March 23, 2007. He performed three surgical procedures on him and last saw him on March 23, 2007. And his opinion at that time was he was not capable of working in any capacity as a result of the work related injuries. Counsel, perhaps we can narrow the issues this way. One of the ways that you can support a claim of total and permanent disability is through medical evidence you would agree with him. There was no medical evidence presented in this case to establish that. The alternative way would be if he falls into the odd lot theory. That is, there would have to be some evidence to claim that he looked for work, because of his age, training, experience, was unable to engage in stable and continuous employment. That didn't happen either. So it would have to turn on the testimony of the doctor, correct? I agree. So you would concede there was no evidence of his activity under the odd lot theory? I would concede that, yes. Okay. Was there a conflict or inconsistency or discrepancy in the testimony of Dr. Raskis? No. No inconsistency whatsoever. Dr. Raskis said he couldn't work. He was asked a question on cross-examination during his deposition about whether he was going to make the injury any worse by working, and he responded that he would not make the injury any worse. But then on redirect examination, his counsel at that time asked him a question as to whether his opinion was still the same. That is, that he was not able to work, and he said it was the same. Now the commission resolved the discrepancy against your client, correct? That's correct. Tell us why they cannot do that under the law. Our contention is that the decision was against the manifest weight of the claim. The Workers' Compensation Commission said that no doctor opined that the petition was medically, permanently, totally disabled, and our contention is that that's not the case. Our contention is that there were at least two pieces of evidence that were submitted by Dr. Raskis which said he was not able to work. So our contention is that that conclusion was incorrect. Well, let me ask you a question. Did Raskis on cross-examination state that from an objective standpoint of the treatment he provided, the client would not be further in risk of injury if he returned to a sedentary or light-duty type job so long as the position did not involve repetitive motion of an act? Did he say that? He did say that. Okay. And what about Dr. Dahl? What did he say? Dr. Dahl said that he was capable of working with restrictions of no lifting over 20 pounds, no repetitive head moves. Assuming that he could get off of the narcotic, which I believe Dr. Raskis said he was not going to get off the narcotic. Now, what did Dr. Coyle say? Dr. Coyle said... Capable of light-duty or sedentary work. He said he felt from a work standpoint petitioner at most would be capable of light-sedentary work, at most. So I don't think that's a ringing endorsement that he's going to be able to go back to work either. So I think he's more middle of the road than what Dr. Dahl was. Dr. Dahl was not an orthopedic surgeon. He was a doctor. And it turned out that doctor referred people to Dr. Raskis. But Raskis, as I read the commission's report, the commission finds that Raskis did not opine that he's medically permanently totally disabled, but rather opined that from an objective standpoint, he was not at risk for further injury if he returned to work, to sedentary or light-duty job, as long as it did not And they therefore concluded that their interpretation of Raskis' testimony was that he was capable of working in some capacity. That's what they found from his testimony. That is what they found, but I respectfully disagree with that because I think just because he's not going to make his injury any worse doesn't mean that he can go back to work. You know, we hear all the time about a ball player being injured, and the one question is going to be whether he's going to hurt himself if he's going to go back. That doesn't mean that he complied. The question is whether he's going to injure himself. I think that's a different question than what we're looking at, and I think that's something that on at least two occasions, Dr. Raskis said that he was unable to work. So that's why I believe the testimony is against the manifest way of the evidence. That man saw my client for over two years, and not on two occasions each like the other two doctors. And I would contend that the arbitrator who found that Dr. Raskis was most persuasive was correct, and that the commission's finding, which was affirmed by the circuit court, that he did not say that, let's say he said he could go back to work. I don't think that's what he said at all. That's what the whole case was about. Right. One issue, please. Pardon? One issue. Was it against the manifest way? I agree. Thank you. Good afternoon. May it please the court. Mr. Hale. My name is Pat Keefe. I'm Keefe and DiPaoli here on behalf of the respondent appellee, Olin Corporation.  This court makes the rules. That is, is a petitioner obviously unemployable? If not, has a petitioner shown that there's no labor market for them? That's the rule. That's the standard. The commission decides whether that legal requirement has been met upon review of all the factual evidence, which would include the medical evidence, the testimony, the treatment, and the opinions. That's a factual determination for the commission to make. And after they reviewed all the evidence, they concluded that there was not an opinion that this man was medically permanently and totally disabled. As Rand has conceded, there was no other evidence put forth that he looked for work, not sufficient evidence to decide whether based on age, training, and experience he would qualify, because this isn't enough evidence for anyone to make that determination. But for them to advance their argument successfully, that there is enough evidence that he's medically permanently and totally disabled, then you have to just use only part of Dr. Raskis' testimony. So how do you characterize objectively Raskis' testimony? I think that Raskis' testimony was, this guy is his patient. He had seen him for a long time. He'd seen him at the time that he saw him. He didn't see him every day. And I think that Raskis was honest in his deposition when he agreed that, number one, he achieved everything he set out to achieve as a surgeon in the case. He did multiple surgeries, and he testified that, yes, he did achieve what he was looking to achieve from an objective and a surgical standpoint. And I think that he was honest when he said that, if you look at the examination of this guy after I have worked on him, objectively I can't stand here and tell you that this man shouldn't be able to go back to work. You said he was capable of returning to work. I'm sorry, Your Honor. Is it a fair characterization that his testimony was that he claimed that he was capable of returning to work? I think you can read it that way. The way the commission has for a long time and regularly used the inquiry, if someone can objectively return to work without the risk of further injury, that, for them, that establishes that they're capable of returning to work. Now, does that mean that there aren't cases in which someone doesn't go back to work or reviewing tribunals haven't concluded that, based on subjective presentation alone, that they can't be permanently in total disability? No. It doesn't mean that. Obviously, your position is that reading Raskis' testimony from that perspective would be, obviously, your interpretation of it, a fair characterization. Yes. Yes. I mean, I think that it's fair. I mean, they don't like it, obviously. They don't think it's fair. The arbitrator didn't like it. But I think that it's reasonable. I mean, really, it's not a matter of whether they like it. Frankly, it doesn't really matter if you like it or whether you would have done the same thing. The question is, is there enough evidence to support the conclusion of the commission? And I think that there's enough in Raskis by itself to support it. But there's other evidence as well. I mean, there's Dahl. There's Coyle. There was a factual surveillance that I think that it wasn't commented on much. But the commission commented that they did review it, and they must have taken into consideration. They looked at the whole picture, and they didn't see a portrait of a permanent total disability. When people go to a museum, they don't go right up and stare right at a small part of the picture. They stand back to get the full picture. And that's what they did. They looked at the whole picture, and they felt that there was enough evidence to conclude that this man should be able to go back to work, if he's not medically permanently totally disabled. Thank you. Thank you. A photo, please. Briefly, one issue. Our contention is that the evidence showed that my client was permanently totally disabled. Thus, if there's medical evidence for that purpose, he did not have the responsibility to produce evidence with reference to the odd lot category that was talked about there. That responsibility would be on the part of the respondent, and there was no evidence produced by the respondent with reference to that. But still, we could not find that he was odd lot, can we? No. Okay. Nothing further. The court will take the matter under advisory.